In re Mark Eugene DIBLING and
Wendy Sue Dibling, Debtors.

No. 04–67476.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Filed Aug. 4, 2014.

Samuel L. Calig, Gregory Adam Wetzel, Columbus, OH, Troy J. Doucet, Daniel A. Yarmesch, Dublin, OH, for Debtors.

***MEMORANDUM OPINION AND OR-
DER REGARDING DEBTORS' MO-
TION FOR CONTEMPT AGAINST
HOUSEHOLD REALTY CORPORA-
TION (DOC. NO. 96)***

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Memorandum Opinion and Order serves as the Court's findings of facts and conclusions of law regarding the above-captioned Motion filed on behalf of Mark Eugene and Wendy Sue Dibling ("Debtors"), and an Objection filed on behalf of Household Realty Corporation ("Creditor"). The Debtors assert that the Creditor failed to timely and fully comply with an order of this Court that required it to treat the home mortgage as current upon the completion of plan payments.

Based upon the evidence, statements of counsel and pleadings filed, the Court has determined that the Creditor failed to correct its business records in a timely manner, and should be required to compensate the Debtors for the expense of this litigation. A summary of the facts and the Court's ruling follow.

The Creditor filed a foreclosure complaint against the Debtors on July 9, 2004, in the Fairfield County, Ohio Common Pleas Court (Case No. 2004 CV 00634). Approximately four months later, on November 3, 2004, the Debtors filed this bankruptcy case under Chapter 13 of the United States Bankruptcy Code ("Code"), and the Court confirmed their Plan on January 15, 2005. During the course of their Chapter 13 case, the Debtors paid both the pre-petition mortgage arrearage and the post-petition, contractually due monthly payments.

After the Debtors completed their Plan, the Chapter 13 Trustee filed a Certification of Final Payment on March 12, 2010. It showed that the Trustee paid the Creditor $19,078.34 in satisfaction of the pre-petition mortgage arrearage and $130,256.02 for the post-petition, contractually due monthly mortgage payments. The Trustee certified that the Debtors were entitled to a discharge and recommended closing of the case. There were no objections filed to the Certification.

On March 17, 2010, the Trustee mailed a letter to the Debtors informing them that his office would disburse a final March 2010 mortgage payment to the Creditor. Pursuant to the Trustee's letter, at the beginning of April 2010 the Debtors were obligated to submit their monthly mortgage payments, for $1,852.45, directly to the Creditor. On April 12, 2010, the Court entered an Order discharging the Debtors from all their debts subject to the Plan.

Eight days later on April 20, 2010, the Trustee filed a Motion to Deem Mortgage Current that requested a finding that as of March 2010, when the Trustee disbursed the last payment to Creditor, the Debtors' mortgage obligation was current. The Trustee served the Creditor, and in the absence of any objections, the Court granted the Motion on May 18, 2010. In relevant part the Order provided:

(a) All pre-petition arrearage claims of (the) Mortgage Company have been paid in full through the confirmed Chapter 13 Plan; (b) All regular, post-petition mortgage payments

have been made by the Trustee through the Final Payment Date as per the motion, and all such "conduit" payments are hereby deemed to have been made on a timely basis; (c) *The mortgage obligation to* (the) *Mortgage Company is hereby deemed current as of the Final Payment Date; and* (d)(the) *Mortgage Company shall adjust its loan balance to reflect the balance delineated in the original amortization schedule as of the Final Payment Date. Any amounts in excess of that balance, including any alleged arrearages, costs, fees or interest are hereby discharged pursuant to 11 U.S.C. § 1328.*

Order at 2 (emphasis added).

What should have been an easy transition, turned into a series of mishaps caused by both the Creditor and the Debtors. It started with the Creditor's rejection of the Debtors' April 2010 payment because it failed to adjust its internal payment history records until August 23, 2010. Once the Creditor corrected its records, however, the Debtors failed to tender all the payments required as of April 2010. Indeed, the parties have stipulated to the payment history that illustrates the errors as follows:

| The Month Payment was Due | Dates Checks Were mailed | Mortgage Payment Amounts Mailed to Creditor | Creditor's Disposition of Checks |
| --- | --- | --- | --- |
| April 2010 | March 31, 2010 | $1,852.45 | Rejected check: "Other: Per Default Dept." |
| May 2010 | Debtors did not mail a check. | $0 | |
| June 2010 | June 21, 2010 | $1,852.45 | Rejected check: "Other: Per Default Dept." |
| July 2010 | Debtors did not mail a check. | $0 | |
| August 2010 | August 9, 2010 | $1,775.21 | Rejected check: "Other: Per Default Dept." |
| September 2010 | September 15, 2010 | $1,775.21 | Rejected check: "Certified Funds Needed" and "Other: Per Default Dept." |
| October 2010 | October 17, 2010 | $1,775.21 | Rejected check: "Certified Funds Needed". |
| November 2010 | Debtors did not mail a check. | $0 | |
| December 2010 | Debtors did not mail a check. | $0 | |
| January 2011 | Debtors did not mail a check. | $0 | |
| February 2011 | March 25, 2011 | $1,800.00 | Rejected check: "Other: Pe r Default Dept." |
| March 2011 | April 7, 2011 | $1,800.00 | Rejected check: "Other: Per Default Dept". |
| April 2011 | May 18, 2011 | $1,800.00 | Rejected check: "Other: Per Default Dept." |
| May 2011 | June 15, 2011 | $1,800.00 | Rejected Check: "Certified Funds Needed". |

| June 2011 | July 22, 2011 | $1,800.00 | Creditor cashed check on August 4, 2011 |

Stipulations at 1–4.

Soon after the rejection of their April 2010 mortgage payment, the Debtors attempted to contact Creditor to resolve the matter but were unsuccessful. On or about June 2010, the Debtors sought help from their former bankruptcy attorney, Mr. Samuel L. Calig ("Mr. Calig"). Mr. Dibling testified that he was present in Mr. Calig's office during a phone conversation with the Creditor. During the conversation, the Creditor told Mr. Calig that the Debtors' loan was in default, and for this reason, it rejected the payments. The Debtors testified that they also contacted the Creditor in July, August, October, and November of 2010.

The Debtors testified that after the rejection of the mortgage payments, they retained the funds in their checking account. Also, the Debtors testified that the payment rejections prompted their attempt to refinance in late 2010; however, this effort failed because the Creditor reported that their mortgage was more than 120 days delinquent. According to Ms. Dana Jean St. Clair Houghman ("Ms. Houghman"), the Vice President and Assistant Secretary of the Administrative Services Division for the Creditor, this delinquency report was in error, due to a failure to update their internal records.

On August 12, 2011, the Creditor filed another foreclosure complaint in the Fairfield County, Ohio Court of Common Pleas (Case No. 2011 CV 00807). Later in the year, the Creditor mailed to the Debtors' financial hardship information. This prompted Mrs. Dibling to mail a January 8, 2012, letter to the Creditor explaining that they had unsuccessfully tried to make the mortgage payments for nearly a year, and did not wish to seek financial hardship assistance. Further, Ms. Dibling asserted the Creditor had failed to comply with the Order entered by this Court deeming the mortgage current. The Creditor dismissed this foreclosure case on March 19, 2012, and Ms. Houghman testified that the Creditor also waived the sum of $6,911.00 in fees on March 15, 2012. However, once the Creditor corrected its records the Debtors never tendered the entire contractually due mortgage payments starting in April 2010, even after asserting they deposited the funds in their checking account. As a result, the Creditor filed another foreclosure complaint on August 2012 (2012 CV 00833), which remains open.

The Court now addresses the legal significance and consequences of the preceding events. The May 18, 2010, Order Deeming the Mortgage Current definitely and specifically directed the parties to take actions to reflect the proper status of their relative obligations. *See Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir.2006) (contempt findings must be premised upon the violation of a definite and specific order). As a result, after receipt of the May 18, 2010, Order Deeming the Mortgage Current, the Creditor was obligated to update immediately its records to reflect that as of March 2010, the Debtors' mortgage was current. However, the Creditor failed to adjust the loan records until three months after the Court entered the Order Deeming the Mortgage Current, and solely on this basis violated the Order at issue. Timeliness in this regard is essential to preserving the benefit of making all plan payments and receiving a Chapter 13 discharge. At the end of a Chapter 13 case, both debtors and creditors derive value from having and

**258**

observing a clear demarcation of their obligations to make and properly credit payments.

Similarly, the Debtors were obligated to tender every mortgage payment starting in April 2010. This obligation was not forfeit when the Creditor rejected the first payment. Rather, the Debtors should have continued to submit all mortgage payments as they fell due, and upon rejection, deposit the funds in a separate account. In this manner, once the Creditor corrected its records in compliance with the Order Deeming the Mortgage Current, the Debtors would have been able to forward all the payments that were due back to and including April 2010. To hold otherwise, would require this Court to fashion a new note and mortgage.

Under these circumstances, the Court will only award a reasonable amount of legal fees and expenses associated with prosecuting the instant Motion. Within thirty days from entry of this Order the Debtors shall file an itemized statement of such legal fees and expenses, and the Creditor shall have thirty days to respond. Upon review of the pleadings, a separate judgment order will be entered.

**IT IS SO ORDERED.**